IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MANUEL GARZA, JR., | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No.SA-09-CA-528-OG |
| | § | **Death Penalty Case** |
| RICK THALER | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

## RESPONDENT'S ANSWER

This is a federal habeas corpus proceeding initiated by Petitioner Terry Darnell Garza, a death-sentenced Texas inmate, pursuant to 28 U.S.C. § 2254. But Garza is not entitled to relief. He does not show that the state courts unreasonably applied clearly established federal law.  Thus, Garza's bid for federal habeas relief should be denied.

## PETITIONER'S ALLEGATIONS

1.   Garza's rights to due process and a fair trial were violated by the removal of his first chair attorney immediately prior to trial.

2.   Garza's right to cross-examination was violated when the trial judge refused to allow a witness to testify the shooting was an accident.

3.   Garza received ineffective assistance of trial counsel when:
     a) counsel failed to submit the venire panel to death penalty examination;
     b) counsel failed to investigate and present mitigating evidence;

        c)  counsel failed to call the investigator as a witness;
        d)  counsel failed to introduce Garza's hospital records.

4.      Garza's due process rights were violated when the trial judge refused to allow him to introduce evidence of the victim's character for violence.

5.      The aggravating factors employed in the Texas capital sentencing scheme are vague and do not properly channel the jury's discretion in violation of the Eighth and Fourteenth Amendments.

6.      The Due Process Clause requires a reviewing court to engage in a proportionality review in death penalty cases.

7.      The statutory mitigation special issue fails to properly place the burden of proof regarding aggravating evidence on the State.

8.      The Texas capital sentencing statute violates the Eighth and Fourteenth Amendments of the Constitution in that it fails to inform the jury that single holdout juror results in a life sentence.

9      The Texas capital sentencing statute violates the Eighth and Fourteenth Amendments of the Constitution in that it requires the jury to predict future dangerousness.

10.     The presumption of correctness under 2254(d) & (e) should not attach to the state court findings of fact.

## STATEMENT OF THE CASE

Garza was convicted of capital murder of a San Antonio police officer acting in the lawful discharge of an official duty and was sentenced to death. CR 239-4.[1] The Texas Court of Criminal Appeals affirmed his conviction.

---

[1]    "CR" is the abbreviation representing the Clerk's Record, the transcript of all the trial filings. "RR" refers to the Reporter's Record of the trial proceedings. "SHCR" is the designation

*Garza v. Texas,* No. AP 74,467, slip op. (Tex. Crim. App. Feb. 16, 2005). While his direct appeal was pending, Garza filed a state habeas application. SHCR 1. The state court held a hearing before adopting the State's Proposed Findings of Fact. SHRR Vols 2-4; SHCR 201-38. The Court of Criminal Appeals adopted the findings of the state habeas court and denied relief. SHCR at cover. The instant petition followed but Garza went back to state court while this action was stayed. Garza's subsequent state writ was dismissed as abusive. *Ex parte Garza*, No. 70,797-02 (Tex. Crim. App. Oct. 12, 2011).

## STATEMENT OF FACTS

Due to recent reports of property crimes in the North area of San Antonio, on the night of February 2, 2001, the SWAT unit of the San Antonio Police Department (SAPD) had a mission. 23 RR 45-46. In a pre-shift meeting, the SWAT sergeant gave all officers their targeted areas and their job that night — to see and be seen. *Id.* at 46-49. SWAT Officer John "Rocky" Riojas, a twelve year veteran of the force, was in full uniform with his SWAT patches on each arm. *Id.* at 41-49. He had his badge on his chest and was driving a marked SAPD car by himself. *Id.* 47, 50. Officer Riojas spent the

---

for the Clerk's Record of the state habeas proceedings. *Ex parte Garza,* No. 73,027-01. And, "SHRR" is the representation for the hearing that was held on state habeas. Where relevant the volume numbers precede the designation and the page number(s) follow it.

night running license plate numbers and checking for warrants. He kept an eye out for suspicious people and at approximately 9:45 p.m. he found one. Manual Garza was a wanted man who did not want to go to jail. Garza had five outstanding county warrants. *Id.* at 94-104.

Upon encountering Officer Riojas, Garza took off running through the Stone Hollow Apartment complex. According to eyewitness testimony, Officer Riojas caught up with Garza and they began to struggle; the witness heard a terrible scream. 23 RR 129-33. At the same time, another eye witness, Erica Henderson, rounded the corner of the parking lot in her car. She slowly and carefully drove by and saw the two men. *Id.* at 196, 201-07. She clearly saw a gun in Garza's hands. Henderson watched as Garza brought the gun over his right shoulder and pulled the trigger putting a bullet in Officer Riojas's head. *Id.* at 207-09. Then Garza took off running with the gun leaving drops of the slain officer's blood throughout the complex. 23 RR 209; 24 RR 116-22, 164-69.

Garza ran to apartment 507 where his friend, Tanya Dominguez lived. 25 RR 51, 53. Dominguez and her boyfriend let Garza in; he told them he had been in a fight. *Id.* at 54-57. Dominquez's boyfriend gave Garza a ride home. Garza left behind blood from Officer Riojas on the walls of Dominiquez's apartment and on the coat and cap he left behind. *Id.* at 57, 124-32. Garza

went to his sister's apartment where she lived with her boyfriend/common law husband Ben Parovel. 26 RR 7, 59. Garza told them he was jumped by a group of guys and he grabbed the gun that fell out during the scuffle. *Id.* at 8-9, 60. He offered to sell the gun to Ben who bought it. *Id.* at 13-14. Ben sees the news the next day about the capital murder of a police officer and dumped the gun. *Id.* at 21-26. Ben later tried to recoup some of the money he paid for the gun by attempting to sell the gun to a confidential informant, who instead contacted the police. *Id.* at 29. Dominguez and her boyfriend also saw the news reports of the murder and contacted the police. 25 RR 132-37.

Less than two days after the murder, the police find both Garza and the murder weapon at his sister's apartment. 26 RR 34, 80, 97-99. Garza confessed to the police. SE 173, 174.

## STANDARD OF REVIEW

In a federal habeas appeal, the district court's findings of fact are reviewed for clear error and the district court's conclusions of law are reviewed de novo. *Martinez v. Johnson,* 255 F.3d 229, 237 (5th Cir. 2001). Under 28 U.S.C. § 2254(d), a federal court may not grant habeas relief unless the state court adjudication (1) "was contrary to federal law then clearly established in the holdings of" the Supreme Court; or (2) "involved an unreasonable application of" clearly established Supreme Court precedent; or

(3) "was based on an unreasonable determination of the facts in light of the record before the state court." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (internal quotation marks omitted) (quoting *Williams v. Taylor,* 529 U.S. 362, 412 (2000); 28 U.S.C. § 2254(d)(1)–(2)). The Supreme Court has explained that a state court decision is "contrary" to clearly established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or confronts facts that are "materially indistinguishable" from relevant Supreme Court precedent, yet reaches an opposite result. *Williams*, 529 U.S. at 405–06.

A "run-of-the-mill" state court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. *Williams*, 529 U.S. at 406. To this end, a state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. *Id.* at 407–09. And, as the Supreme Court recently described this deferential standard, in order to determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with

the holding in a prior decision of this Court." *Richter*, 131 S. Ct. at 786. Indeed, this is the "only question that matters under § 2254(d)(1)." *Id.*

Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision. *Richter,* 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woodford v. Visciotti,* 537 U.S. 19, 27 (2002) (federal habeas relief is only merited where the state-court decision is both incorrect and objectively unreasonable, "whether or not [this Court] would reach the same conclusion"). Moreover, "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Alvarado,* 541 U.S. at 664. This is particularly true when reviewing a state court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), which when analyzed in conjunction with § 2254(d), creates a difficult to surmount, "doubly" deferential assumption in favor of the state court denial. *Richter*, 131 S. Ct. at 786. And "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter,* 131 S. Ct. at 786.

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.* (internal citations omitted).

Moreover, it is the state court's "ultimate decision" that is to be tested for unreasonableness, and not every jot of its reasoning.  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir.  2002) ("[W]e review only the state court's decision, not its reasoning or written opinion[.]"). Indeed, state courts are presumed to know and follow the law." *Visciotti*, 537 U.S. at 24.  And, even where the state court fails to cite to applicable Supreme Court precedent or is unaware of such precedent, AEDPA's deferential standard of review nevertheless applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

If the Supreme Court has not "broken sufficient legal ground to establish [a] . . . constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the

AEDPA bar" under either the contrary to or unreasonable application standard. *Williams*, 529 U.S. at 381. Stated differently:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786–87. And a federal court must be wary of circumstances in which it must "extend a [legal] rationale" of the Supreme Court "before it can apply to the facts at hand" because such a process suggests that the proposed rule is not clearly established. *Alvarado,* 541 U.S. at 666.

AEDPA also provides that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). And, except for the narrow exceptions contained in § 2254(e)(2), the evidence upon which a petitioner would challenge a state court fact finding must have been presented to the

state court. Because a federal habeas court is prohibited from granting relief unless a decision was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," it follows that demonstrating the incorrectness of a state court fact finding based upon evidence not presented to the state court would be of no avail to a habeas petitioner.  28 U.S.C. § 2254(d)(2).

## ANSWER

**I.   Garza's Claim That His Due Process Rights Were Violated By the Removal of Counsel Prior to Trial Is Without Merit And Was Therefore Properly Rejected by the State Courts. (Claim 1).**

Garza complains that he was deprived of due process and a fair trial when the trial court replaced lead defense counsel some fifty days before the start of trial. Pet. at 38–44. Garza raised a related state-law claim on direct appeal and raised the current constitutional claim on state habeas where it was rejected by the state courts. *Garza,* No. AP 74,467, slip op. at 2-3; SHCR 223. Any claim relating to his rights under state law fails to present a cognizable constitutional claim. *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (citation omitted). In order for a federal writ to issue, there must be a violation of "the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Moreover, Garza's contention of a due

process right is erroneous. Thus, the rejection by the state courts was reasonable.

The facts of Garza's claim are these. The offense was committed on February 2, 2001. 27 RR 38–39. Garza was arrested two days later and original counsel was appointed February 14th. 27 RR 65, 72; CR 3. But due to a lack of qualification, initial counsel was allowed to withdraw. CR 7-9. On February 21, Raymond Fuchs was appointed as lead counsel and Edward Camara was appointed as second chair counsel. CR 13-14. Garza was indicted on April 11th and the trial court scheduled pretrial hearings for August 29, 2002, with the trial to start on September 3, 2002. CR 15, 85.

More than a year later, on July 11, 2002, Mr. Fuchs, the lead attorney, citing a scheduling conflict, moved to withdraw. CR 83-84. That same day, the court granted the motion and appointed new lead counsel Vincent Callahan. CR 35, 76. On July 15, 2002, Mr. Camara learned of the substitution and objected. CR 41–48. The court told him that the trial would begin on August 30, 2002, and denied the second-chair's motion for a continuance. CR 16, 47.

Although Garza labels his complaint as one grounded in the Fourteenth Amendment guarantees of due process and a fair trial, he cites cases grounded in the Sixth Amendment guarantee of effective assistance of

11

counsel. Pet. at 42–44, *citing Satterwhite v. Texas*, 486 U.S. 249, 256 (1988); *United States v. Cronic*, 466 U.S. 653, 659 (1984); *Gideon v. Wainwright*, 372 U.S. 335, 342 (1964). One can presume that the guarantee of effective assistance of counsel offers greater protection than the guarantee of due process and a fair trial. *Mosley v. Dretke*, 370 F.3d 467, 474 (5th Cir. 2004) (noting that where it is unclear whether petitioner raises ineffective-assistance claim or due process claim, court will review the claim as Sixth Amendment claim "[o]ut of an abundance of caution").

Indeed, the right to counsel is not recognized for its own sake but for its ability to ensure that the accused gets a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984); *Cronic*, 466 U.S. at 658. "Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *Id.* (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867–69 (1982); *United States v. Morrison*, 449 U.S. 361, 364–65 (1981); *Weatherford v. Bursey*, 429 U.S. 545 (1977)). "The Constitution guarantees a fair trial through the Due Process Clause, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause." *Strickland*, 466 U.S. at 685. Hence, if Garza fails to show he received

ineffective assistance, he necessarily fails to show he was deprived of due process or a fair trial.

Ordinarily, a petitioner who wishes to demonstrate ineffective assistance of counsel must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. In connection with his claim, Garza fails even to allege those actions or omissions of counsel that show deficient performance. And he fails also to argue or demonstrate the resulting prejudice. Pet. at 39–44. By citing *Cronic*, rather, he seems to argue that failure of the trial court to grant a continuance constitutes a denial of counsel. *Id.* at 42. But such reliance is misplaced.

A trial is unfair when at a critical stage of trial the accused is denied counsel. *Cronic*, 466 U.S. at 659. A trial also is presumed unfair where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* Garza does not appear to allege that counsel failed to subject the prosecution's case to meaningful adversarial testing. He alleges, rather, that the appointment of new lead counsel fifty days before the start of trial constituted a denial of counsel at a critical stage of trial. Pet. at 42.

Where "surrounding circumstances made it so unlikely that any lawyer could provide effective assistance,"ineffectiveness may be presumed. *Cronic*,

466 U.S. at 661 (citing *Powell v. Alabama*, 287 U.S. 45 (1932)). Yet not every refusal to postpone a criminal trial gives rise to such a presumption. *See id.* Indeed, the presumption has not been applied where counsel was appointed twenty-five days before trial, *see id.* at 649; in a capital case where counsel was appointed three days before trial, *see Avery v. Alabama*, 308 U.S. 444 (1940); or where substitute counsel was appointed six days before trial, *see Morris v. Slappy*, 461 U.S. 1, 4 (1983), or the day of trial, *see Chambers v. Maroney*, 399 U.S. 42, 53 (1970). The Supreme Court has said it was "not disposed to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel." *Id.* at 54.

In the instant case, Garza was never deprived of counsel. He has been represented by appointed counsel since February 14, 2001. The only change has been counsel's identity. Mr. Camara, the second chair counsel was a constant since February 21, 2001, through the trial. And when lead counsel withdrew on July 11, 2002, his replacement was appointed that same day. While the Sixth Amendment entitles Garza to counsel, it does not entitle him to counsel of his choosing. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989).

Garza fails to show that he was deprived of counsel within the meaning of *Cronic*. In order to show that he was deprived of the effective assistance of

counsel, he must meet the standard set out in *Strickland*, that is, that the performance of counsel was objectively unreasonable and such deficient performance prejudiced his cause. 466 U.S. at 687. Garza fails to make such arguments. Thus, Garza's claim of a due process violation must fail and the state courts were reasonable in denying his claim. Garza is not entitled to federal habeas relief.

## II.   The State Courts Did Not Improperly Deny Garza's Claims of Denial of Due Process. (Claim 2 and 4).

Garza claims that he was denied due process because the trial court erred in excluding testimony that the murder appeared accidental to the eyewitness. Pet. at 45-54. Garza also claims his due process rights were violated when the trial judge refused to allow him to introduce evidence of the victim's character for violence. Pet. at 106-13. Garza raised both these claims on direct appeal and state habeas. Both times, the state courts rejected his claims. *Garza,* No. AP 74,467, slip op. at 3-6; SHCR 224. This was an adjudication on the merits and this court cannot grant habeas corpus relief unless it determines that the state court's determination was in conflict with clearly established federal law as determined by the Supreme Court or that it "was based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d).

The Constitution guarantees an opportunity for effective cross-examination, but "not cross-examination that is effective in whatever way and to whatever extent the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). The Confrontation Clause prevents against two distinct types of abuse:  admission of out-of-court statements and restriction imposed upon the scope of cross-examination. *Fensterer*, 474 U.S. at 18. A criminal defendant proves a constitutional violation of the second type by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness and, thereby, to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness. *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). The right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52 (1987). Nonetheless, trial judges retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. *Van Arsdall*, 475 U.S. at 679.

Further, the Fifth Circuit has stated that "[w]e may not consider the correctness of the evidentiary rulings of the Texas courts; our authority is limited to a determination of "whether there has been a constitutional infraction of [petitioner's] due process rights which would render the trial as a whole 'fundamentally unfair.'" *Trussell v. Estelle*, 699 F.2d 256, 259 (5th Cir. 1983) (citing *Nelson v. Estelle*, 642 F.2d 903 (5th Cir.1981)). Therefore, "[a] state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994)).  As such the appropriate inquiry for this Court is not whether the trial court properly excluded evidence but whether the state courts were unreasonable in their denial of Garza's claim.

Presently, the state courts were not unreasonable in denying Garza's claim of limited cross-examination because they determined that Garza was able to present this evidence to the jury. *Garza,* No. AP 74,467, slip op. at 6. As such, the courts properly concluded a lack of harm. Therefore, even presupposing that the evidence was wrongly excluded, Garza has not demonstrated that the omission rendered his whole trial fundamentally unfair or that the state courts were unreasonable in denying him relief.

Further, Garza's due process rights were not violated when the trial judge refused to allow him to introduce evidence of the victim's character for violence. Pet. at 106-13. As the state court explained,

> When a defendant in a homicide case raises the issue of self-defense, he may introduce evidence of the deceased's violent character. Specific acts of violence are admissible to demonstrate that the deceased was the first aggressor, but only to the extent that they are relevant apart from showing character conformity. When such evidence is offered to show that the deceased was the first aggressor, the defendant need not have knowledge of the specific violent acts at the time of the homicide. "The proper predicate for the specific violent prior act by the deceased is some act of aggression that tends to raise the issue of self-defense, which the violent act may then help clarify." The key is that the proffered evidence explains the deceased's conduct. "As long as the proffered violent acts explain the outward aggressive conduct of the deceased at the time of the killing, and in a manner other than demonstrating character conformity only, prior specific acts of violence may be admitted even though those acts were not directed against the defendant."

*Garza,* No. AP 74,467, slip op. at 8. The state court went on to summarize the two different accounts Garza gave of his encounter with Officer Riojas and testimony that Garza's stance would have been perceived as an attack to the officer. *Id.* 8-9. The court also noted that, "Neither of the two witnesses to the incident saw Riojas hit Garza." *Id.* at 9. Thus, the court concluded under Texas law that "The proffered evidence was not necessary to explain or clarify Riojas's conduct at the time of the murder. . ." and "Riojas's actions were in direct response to Garza's attempt to resist arrest." Denying the

claim, the court further elaborated that "[t]he trial court was within the zone of reasonable disagreement in excluding Garza's proffered evidence." *Id*.

Given the state court's adjudication of its own law, Garza cannot show this evidence was improperly excluded much less that it rose to the level of a constitutional violation. For these reasons, his claim should be denied.

## III.   The State Court Properly Denied Garza's Claims of Ineffective Assistance of Trial Counsel And One Claim Is Procedurally Defaulted. (Claim 3)

Garza complains that he received ineffective assistance of trial counsel when: counsel failed to submit the venire panel to death penalty examination; counsel failed to investigate and present mitigating evidence; counsel failed to call the investigator as a witness; and counsel failed to introduce hospital records into evidence. Pet. at 54-106. Garza raised the last three claims during his state writ proceedings. The trial court rejected them and the Court of Criminal Appeals adopted the findings. SHCR cover, 227-31. Garza does not show the state courts' actions to be unreasonable. Further, Garza first claim is procedurally defaulted by his failure to exhaust. Therefore, federal relief should be denied.

### A.   Standard of Review

The burden of proof in a habeas corpus proceeding attacking the effectiveness of counsel is on the petitioner, who must demonstrate both

deficient performance and resultant prejudice. *Carson v. Collins*, 993 F.2d 461, 466 (5th Cir. 1993). The familiar standard by which a claim of ineffective assistance of counsel is weighed is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 687-88. In so doing, a convicted defendant must overcome a strong presumption that the conduct of his trial counsel fell within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Loyd v. Whitley*, 977 F.2d 149, 156 (5th Cir. 1992).

"[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland,* 466 U.S. at 692. In order to establish that he has sustained prejudice, the convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* at 694; *Loyd*, 977 F.2d at 159. This showing of prejudice must be "rather appreciable"; thus, a mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland. Armstead v. Scott*, 37 F.3d 202, 206 (5th

Cir. 1994). Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *Strickland,* 466 U.S. at 697; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992). Further, as the Supreme Court reminded, review of *Strickland* claims is "doubly deferential." *Knowles v. Mirzayance,* 566 U.S. 111, 123 (2009).

### B.   Garza's claim of ineffective assistance of counsel for failing to ask death penalty questions during voir dire is procedurally defaulted.

Garza's claim regarding the failure to ask questions during voir dire about the death penalty is unexhausted because it was not properly presented to the state courts. Further, Garza fails to acknowledge let alone account for his default, and thus, does not present any of the exceptions necessary to overcome these bars. As such, Garza is not entitled to federal habeas relief.

It is well settled that federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989). Thus, federal review of a habeas claim is procedurally barred if the last state court to consider the claim

expressly and unambiguously based its denial of relief on a state procedural default. *Coleman*, 501 U.S. at 729; *Harris*, 489 U.S. at 265; *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995).[2]

Garza did not raise the instant claims until his second state habeas application, which was dismissed as an abuse of the writ. *Ex parte Garza,* No. 70,797-02. Thus, the state court's dismissal of his claims as an abuse of the writ precludes federal habeas relief as a matter of law. *See Fearance v. Scott,* 56 F.3d 633, 642 (5th Cir. 1995) (holding that pre-11.071 abuse of the writ doctrine was strictly and regularly applied and, thus, was independent and adequate state procedural bar); *Emery v. Johnson,* 139 F.3d 191, 195-96 (5th Cir. 1997) (extending *Fearance* to article 11.071 statutory abuse of writ doctrine); *Barrientes v. Johnson*, 221 F.3d 741, 758-59 (5th Cir. 2000); *Fuller v. Johnson,* 158 F.3d 903, 906 (5th Cir. 1998); *see also Moore v. Texas,* 535 U.S. 1044, 1047-48 (2002) (Scalia, J., *dissenting*) (recognizing Texas abuse-of-the-writ statute as independent and adequate state ground).

Further, Garza's default of his claims can only be excused if he can demonstrate (1) cause for the default and prejudice as a result of the alleged violation of federal law, or (2) a resulting "fundamental miscarriage of

---

[2]     A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a defendant's claim. *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

justice." *Coleman*, 501 U.S. at 750-51. To establish "cause," a habeas petitioner must ordinarily identify circumstances external to the defense that prevented him from properly asserting the claim in state court. *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). Ineffective assistance of counsel cannot constitute "cause" unless deficiencies or omissions in counsel's performance both resulted in the default and amounted to constitutionally ineffective assistance of counsel at trial or on direct appeal. *Coleman*, 501 U.S. at 752.[3] Moreover, the requisite showing of "prejudice" is significantly greater than that required to establish plain error. "The habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray*, 477 U.S. at 493 (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)). Finally, a petitioner may come within the

---

[3]       The Supreme Court's recently ruling in *Martinez v. Ryan*, 566 U.S. __, slip op. (2012), does not change this fact. First, *Martinez* does not apply to Texas. *Martinez* only grants that postconviction counsel's actions may be viewed as cause in cases where the initial postconviction review is the only forum where ineffective assistance of counsel claims may be raised by rule or statute. *Id*. at 9-11. In Texas claims against trial counsel may be raised on direct appeal. *Lopez v. Texas*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) (holding that when trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal and that unlike other claims rejected on direct appeal, claims of ineffective assistance of counsel rejected due to lack of adequate information may be reconsidered on state habeas). Indeed, Garza's claims of failure to voir dire are apparent on the face of the record. Further, even assuming that *Martinez* applies, Garza has had two bites at the proverbial apple and must show ineffectiveness of both direct appeal and postconviction counsel to obtain relief, which he has not done.

"fundamental miscarriage of justice" exception, (1) if, as a consequence of the identified constitutional error in the guilt-innocence phase and in light of new evidence, "it is more likely than not that no reasonable juror would have convicted him," *Schlup v. Delo*, 513 U.S. 298, 329 (1995), or (2) if he establishes "by clear and convincing evidence that, but for the constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty" under state law. *Sawyer v. Whitley*, 505 U.S. 333, 350 (1992).

In light of Garza's failure to properly present his constitutional claims to the state courts and the corresponding refusal by those courts to examine his claims on the merits based on independent and adequate state procedural law, Garza is undeserving of federal habeas relief. Moreover, Garza has failed to show any possible excuse for his default let alone the required cause and prejudice. Garza cannot make a showing of actual innocence regarding his conviction or sentence. Thus, Garza's claims should be barred from review and relief denied.

Finally, Garza has not proven the merits of his claim. Counsel testified at the state hearing that he was concerned with voir dire and looking for a "ringer" which he defined as someone capable of answering the State's questions but ultimately unable to follow through. 4 SHRR 5. "A conscious

and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Green v. Johnson,* 116 F.3d 1115, 1122 (5th Cir. 1997) (*quoting Garland v. Magio,* 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)). For these reasons, Garza's claim should be denied.

### C.   Garza is not entitled to relief on his claim that counsel were ineffective for failing to investigate and present mitigating evidence.

Garza alleges that his trial counsel were ineffective at the punishment phase of trial due to their lack of investigation. But, as shown below, the record belies these assertions. Thus, Garza is unable to prove either of the two required prongs of *Strickland*.  This failure dooms Garza's bid for federal habeas relief.

A petitioner alleging inadequate investigation must show what such investigation would have uncovered and how his defense would have thereby benefitted. *Nelson v. Hargett,* 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986). Further, although it is clear that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," in assessing unreasonableness, however, a heavy measure of deference must be

25

applied to counsel's judgments. *Strickland*, 466 U.S. at 691. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

To succeed on an ineffective-assistance-of-counsel claim on the basis of counsel's failure to discover or call witnesses, the petitioner must prove that the witness was willing and able to testify, and to what the witness would have testified. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). The Fifth Circuit has reaffirmed this requirement for claims regarding uncalled expert witnesses. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Evans v. Cockrell*, 285 F.3d 370, 377-78 (5th Cir. 2002) (rejecting uncalled witness expert claim where petitioner failed to present evidence of the expert's potential testimony). Such claims "are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).

In this case, Garza claims that counsel failed to present a cohesive mitigation case. Pet. at 73-103. But, as much as he might wish it were

otherwise, Garza's claims of ineffective assistance of counsel must fail for two key reasons. First, because Garza has not proven that counsel's investigation was inadequate. Second, because Garza's proffered evidence is not so compelling as to prove he was prejudiced by counsel's failure to present it at any stage.

Despite Garza's claims, as the state habeas court found trial counsel's investigation was not lacking. SHCR 229-32. A live hearing was held before the trial court in which both trial counsel testified. The state habeas court expressly notes that Garza did not prove the merits of his ineffective assistance of counsel claim because he did not show that the witnesses were available at the time of trial and willing to testify. SHCR 229-30 (#5). And Garza has not provided any clear and convincing evidence sufficient to overcome the presumption of correctness these findings are due. Moreover, counsel sought to have not one but two experts appointed to examine Garza and investigate his life. SHCR 206 (#10), 210 (#19).

Logically, it follows that if counsel knew of such evidence but did not present it, then counsel must have had a reason for doing so. Indeed, a time-honored tenet of the familiar *Strickland* analysis is the presumption that counsel's strategic decisions cannot amount to ineffectiveness. "A conscious and informed decision on trial tactics and strategy cannot be the basis for

constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" (*Ricky Lee*) *Green v. Johnson,* 116 F.3d 1115, 1122 (5th Cir. 1997) (*quoting Garland v. Magio,* 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)). Thus, counsel will not be deemed ineffective for failing to advance a defensive theory when his decision "was a reasonable strategic choice based upon a reasonable professional assessment of the plausibility of the defense and its likelihood of success." *Moreno v. Estelle,* 717 F.2d 171, 177 (5th Cir. 1983).

As the state court found, "the defense did have a mitigation strategy." SHCR 229 (#2). The court went on to find that counsel's strategic decision not to call their expert witness to testify was "a reasonable trial decision given that the expert would have testified that Garza was a future danger." *Id.* at (#3). Thus, the court properly concluded the damaging nature of the testimony "far outweighed any benefit . . . ." *Id.* It is entirely reasonable to believe counsel thought the jury would find this information more damning then any benefit that could be obtained. The court also credited the defense strategy in only calling witnesses who voluntarily showed up for court. SHCR 230 (#6). Additionally, to the extent Garza cites to witnesses who did not testify before the state habeas court during the hearing, the court found a failure to meet the burden of proof. SHCR 229 (#5).

Indeed, this case is a direct contrast to the case normally cited to when invoking a failure to investigate claim. *Wiggins v. Smith,* 539 U.S. 510 (2003). Because *Wiggins* is a case about an inadequate investigation, the decision necessarily relies upon a showing of not only what evidence counsel failed to present but also a showing that counsel was *unaware* such evidence existed. 539 U.S. at 518. Trial counsel for petitioner Wiggins admitted that they chose not to explore their client's past because they decided to focus solely on the question of guilt/innocence. *Id.* In so choosing, counsel did not seek to have a social history prepared, which was standard practice in Maryland at the time and which would have revealed both the details and extensive nature of their client's suffering. *Id.* at 524. In light of both the extensive mitigation evidence and that counsel's actions were not within commonly accepted practices, the Supreme Court held counsel to be ineffective. *Id.* at 536.

But Garza has not made a persuasive showing that any credible mitigating evidence existed of which counsel was unaware. Because of this failure, Garza has not demonstrated that trial counsel performed an inadequate investigation or was otherwise deficient.

As Garza is unable to demonstrate that counsel's investigation was actually lacking, his claim that his trial counsel performed deficiently is also without merit. Yet, even assuming that counsel were somehow deficient in

failing to find this evidence earlier or in failing to present it, Garza cannot prove prejudice. *See Santellan v. Cockrell,* 271 F.3d 190, 198 (5th Cir. 2001).

Indeed, Garza's evidence of a difficult childhood and abuse pales in comparison with his deadly fight with a police officer. Garza killed Officer Riojas to avoid arrest on property crimes. Further, as the state court found Garza's own proffered expert would have undermined his mitigation case. SHCR 231 (#9). Dr. Allen's testimony would have supported "a conclusion that Garza would engage future violent acts" as he had "four of the seven risk factors." *Id.* The court went on to find Dr. Allen's testimony "not credible" as she "ignored several pieces of critical information." *Id.* (#10). And, that Dr. Allen's testimony would have been rebutted by the State's expert. *Id.* at 232. Thus, in finding a lack of prejudice, the court noted Dr. Allen's acknowledgement that Garza's case was a "close call" wherein experts could disagree. In summary the court concluded, "the net effect of Dr. Allen's testimony would not have changed the results of this case." *Id.*

In light of his utter failure to establish the merits of his underlying claim, the actions of the state habeas courts are not an unreasonable application of clearly established law.  As such, his claims of ineffective assistance of counsel should be denied.

### D.   The State courts properly denied Garza's claim that counsel should have called the defense investigator as a witness.

Garza complains that he received ineffective assistance of trial counsel because counsel failed to call the investigator as a witness to impeach the testimony of eyewitness Erika Henderson. Pet. at 103-05. Garza contends that Henderson testified "in opposition" to the statements she made to defense counsel and the investigator. Garza goes on to cite to multiple state cases that hold that failure to call a corroborating witness can be ineffective and is not attributable to strategy. *Id.* But Garza ignores the ruling from the state court that such evidence was not admissible under state law. Thus, his claim of ineffective assistance of counsel was reasonably denied.

Federal courts sitting in habeas do not review state courts' application of state evidence law. *Jones v. Cain*, 600 F.3d 527, 536 (5th 2010) (citing *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998); *Mercado v. Massey*, 536 F.2d 107, 108 (5th Cir. 1976)). As such, the finding that the investigator's testimony was inadmissible is controlling. SHCR 227 (#3). As the state court rightly points out, "Trial counsel cannot be ineffective for not attempting to introduce inadmissible evidence." *Id.* Garza's citations to further state law cases do not alter this fundamental holding and he has not proven a violation of his constitutional right to effective counsel. This claim must be denied.

E.    **The state court also properly denied Garza's claim regarding counsel's failure to admit Garza's hospital records showing injuries from a beating.**

In his final complaint of ineffective assistance of counsel, Garza complains that counsel failed to introduce hospital records into evidence. Pet. at 105-06. Specifically, he contends these records indicated Garza had been beaten and lent validity to his claim of self-defense. *Id.* But again, Garza ignores the controlling finding of the state court that such evidence was not admissible.

In its findings denying relief, the state courts found that on direct appeal the Court of Criminal Appeals examined the evidence adduced at trial and concluded that the issue of self-defense was not raised. SHCR 228 (#2). The court also found that there is no record evidence to establish that the injuries in the hospital report were caused by the victim. *Id.* at (#3). The court then found that to the extent this evidence was admissible during the guilt-innocence phase it was only relevant to self-defense and thus the evidence would have been denied as inadmissible. *Id.* at (#4). Again, this Court cannot review the application of state evidence law and the conclusion that such evidence would have been inadmissible controls this claim. *Jones*, 600 F.3d at 536. As the state court concluded, "Counsel cannot be ineffective for failing to

attempt to introduce inadmissible evidence." SHCR 228 (#4). This statement is undeniably correct and federal habeas relief should be denied.

## V.   Garza's Challenges to the Texas Death Penalty Statute Are Without Merit. (Claims 5-9)

### A.   Garza's claim that he was denied due process because Texas law does not adequately define "personal moral culpability" and "sufficient mitigating circumstances" is without merit. (Claim 5)

Garza argues that the aggravating factors employed in the Texas capital sentencing scheme are vague and do not properly channel the jury's discretion in violation of the Eighth and Fourteenth Amendments. Pet. 113-15. Specifically, he complains that the trial court failed to define the terms "personal moral culpability of the Defendant" and "sufficient mitigating circumstances. But the Texas courts and the Fifth Circuit have repeatedly rejected claims of vague terms. Further, the claim is utterly devoid of merit as Garza cannot show a violation of clearly established federal law.  For these reasons, Garza's plea for federal habeas relief should be denied.

The Court of Criminal Appeals correctly rejected this claim on automatic appeal citing to numerous cases where this claim was rejected. *Garza,* No. AP 74,467, slip op. at 11.

This rejection is supported by federal precedent. The Supreme Court has specifically commended the current Texas capital-sentencing scheme,

calling the new statute "[a] clearly drafted catchall instruction on mitigating evidence" and a model of "brevity and clarity". *Penry v. Johnson*, 532 U.S. 782, 802-803 (2001) (*Penry II*). Furthermore, the Fifth Circuit has repeatedly held that "Texas's definition 'encompasses' virtually any mitigating evidence.'" *Roach v. Quarterman*, 220 Fed. App'x 270, 277 (5th Cir. 2007)(quoting *Beazley v. Johnson*, 242 F.3d 248, 260 (5th Cir. 2001)). Indeed, the Fifth Circuit has consistently rejected habeas challenges based on a failure to define the terms contained in the Texas special sentencing issues. *See, e.g., Hughes v. Johnson*, 191 F.3d 607, 615 (5th Cir. 1999) ("We similarly have rejected contentions that 'probability' and other terms included in the statutory special issues are unconstitutionally vague"); *Woods v. Johnson*, 75 F.3d 1033-34 (5th Cir. 1996) (citing cases demonstrating that Fifth Circuit has "frequently rejected challenges to the lack of definition of diverse terms in the first two [Texas] punishment special issues") (citations omitted).

Moreover, precise definitions are not a prerequisite to an appropriate sentencing scheme. The Supreme Court has held, "[e]nsuring that a sentence of death is not so infected with bias or caprice is our 'controlling objective when we examine eligibility and selection factors for vagueness.' Our vagueness review, however, is 'quite deferential.' As long as an aggravating factor has a core meaning that criminal juries should be capable of

understanding, it will pass constitutional muster." *Jones v. United States*, 527 U.S. 373, 400 (1999) (*quoting Tuilaepa*, 512 U.S. at 973); *see also Jurek v. Texas*, 428 U.S. 262, 274-76 (1976) (rejecting vagueness challenge to the future dangerousness special issue). Indeed, as the Court noted in *Pulley v. Harris*, the Texas punishment issues are not vague as they have "a common sense core of meaning." 465 U.S. 37, 50 n.10 (1984); *see Jurek*, 428 U.S. at 279 (White, J., concurring, Burger, CJ., and Rehnquist, J., joining) (the issues posed in the sentencing proceeding have a "common sense core of meaning" and criminal juries "should be capable of understanding them").

As for Garza's argument that the capital-sentencing statute is invalid because it limits his mitigating evidence to evidence that could be considered as reducing his moral blameworthiness, the Court itself has broadly used the term "moral blameworthiness" to describe that which a jury considers in effectuating the mitigation inquiry. *Schriro v. Landrigan*, 550 U.S. 465, 499 (2007); *South Carolina v. Gathers*, 490 U.S. 805, 818 (1984). Specifically, the Court has used the term to describe how a jury gives effect to good character evidence that is not "directly relevant" to the crime. *Gathers*, 490 U.S. at 818.

This Court's case law simply does not suggest that Texas's current vehicle for the consideration of mitigating evidence is impermissibly narrow.

Accordingly, Garza's claim is without merit and the Court of Criminal Appeals acted properly in denying it.

### B. There is no clearly established federal law requiring appellate review of a death sentence. (Claim 6)

Garza next complains that the Due Process Clause requires a reviewing court to engage in a proportionality review in death penalty cases. Pet. 116-32. According to Garza, the appellate courts should be required to conduct "a meaningful proportionality review of death penalty verdicts" in order to consider whether a particular capital murder defendant's death sentence is excessive or disproportionate as compared to sentences imposed in similar capital cases. Because it is clear under Fifth Circuit and Supreme Court precedent that the Constitution does not mandate a comparative proportionality review of a death sentence, and because Garza has failed to establish that the state court's adjudication of this claim was either contrary to or involved an unreasonable application of clearly established federal law, his request for federal habeas relief on this claim should be denied.

To the extent that Garza believes that his due process rights are being violated by the Court of Criminal Appeals' failure to review the sufficiency of the jury's answer to the mitigation special issue, his claim still fails because the sufficiency of such evidence is not a matter for appellate review. The

Supreme Court has held that meaningful appellate review of death sentences is crucial to the preservation of a fair and just system of capital punishment. *Parker v. Dugger,* 498 U.S. 308, 321 (1991); *Clemons v. Mississippi,* 494 U.S. 738, 749 (1990). But Supreme Court jurisprudence distinguishes between a jury's "eligibility decision," in which the jury must convict the defendant of murder and find at least one aggravating circumstance, and its "selection decision," in which the jury must determine whether a defendant who is eligible for the death penalty should, in fact, receive it. *Tuilaepa v. California,* 512 U.S. at 972-73. The Court further recognized that "separate requirements" apply to each decision. *Id.* at 972. The "eligibility decision" must be made with "maximum transparency" so as to make the process for imposing the death penalty "rationally reviewable." *Id.* at 973. On the other hand, the "selection decision" requires "individualized sentencing and must be expansive enough to accommodate relevant mitigating evidence so as to assure an assessment of the defendant's culpability." *Id.*

In Texas, the "eligibility decision" is made at guilt-innocence where the trier of fact determines whether to convict the defendant of capital murder. *See Woods v. Cockrell,* 307 F.3d 353, 359 (5th Cir. 2002). Once the defendant is convicted, or determined to be "death eligible," the jury then answers the statutory punishment issues and decides whether that defendant receives the

death penalty or life imprisonment. During this selection process, the sentencing jury is "free to consider a myriad of factors to determine whether death is the appropriate punishment." *California v. Ramos*, 463 U.S. 992, 1008 (1983). Indeed, the Supreme Court has authorized "unbridled discretion" in the jury's determination of whether to impose the death penalty. *Zant*, 462 U.S. at 875.

Such unfettered discretion assures a capital defendant that the punishment imposed is "an individual determination on the basis of the character of the individual and circumstances of the crime." *See id.* at 879. That is, the jury is free to hear, consider, and give effect to all relevant evidence before assessing such a severe penalty. As such, there is no restriction on the jury's ability to extend mercy and choose *not* to sentence a defendant to death. Requiring an appellate court to second-guess a jury's subjective determination of extenuating circumstances would inevitably result in courts prioritizing certain mitigating factors over others and, therefore, restricting a sentencing jury's capacity to individually assess the circumstances and situation of each defendant in violation of the Supreme Court's directive.

Thus, although a capital defendant is entitled to "meaningful appellate review" of a death sentence under the Eighth and Fourteenth Amendments,

appellate courts are not required to conduct an independent review of the jury's mitigation finding. *Pulley v. Harris*, 465 U.S. 37 (1984) (rejecting an argument that the Constitution required states to conduct a comparative proportionality review of a death sentence); *Parker*, 498 U.S. at 321 (holding that the Constitution does not require appellate review of punishment evidence). Indeed, the Supreme Court has explained:

> an appellate court, unlike a capital sentencing jury, is wholly ill-suited to evaluate the appropriateness of death in the first instance. Whatever intangibles a jury might consider in its sentencing determination, few can be gleaned from an appellate record. This inability to confront and examine the individuality of the defendant would be particularly devastating to any argument for consideration of what this Court has termed "[those] compassionate or mitigating factors stemming from the diverse frailties of humankind." *When we held that a defendant has a constitutional right to the consideration of [mitigating] factors...we clearly envisioned that that consideration would occur among sentencers who were present to hear the evidence and arguments and see the witnesses.*

*Caldwell v. Mississippi*, 472 U.S. 320, 330-31 (1985)(internal citations omitted)(emphasis added).

Accordingly, the Fifth Circuit has emphatically upheld the constitutionality of Texas courts' refusal to review the sufficiency of mitigating evidence. *Hughes*, 191 F 3d at 621-22(citing *Pulley*, 465 U.S. at 37); *Moore v. Johnson*, 225 F.3d 495, 507 (5th Cir. 2000) (holding that "Texas followed Supreme Court instruction to the letter. No court could find that

Texas had acted contrary to federal law as explained by the Supreme Court, and no benefit will arise from further consideration of the obvious."). Circuit precedent also holds that the absence of mitigation sufficiency review does not violate constitutional concerns because the state appellate court satisfies federal constitutional requirements when it provides a meaningful review of the evidence supporting the future dangerousness special issue. *Beazley v. Johnson*, 242 F.3d 248, 261 (5th Cir. 2001).

Furthermore, Garza's argument for requiring a proportionality review is wholly unpersuasive. Garza contends that such review is constitutionally required in criminal cases because it is constitutionally required in some *civil* cases under the Supreme Court's decision in *Honda Motor Company Ltd. v. Oberg*, 512 U.S. 415 (1994). *Id.* But as the Court of Criminal Appeals explained in response to an identical claim, *Honda* does not stretch that far:

> *Honda* dealt with civil procedures, which by their nature operate under vastly different due process principles than do criminal cases in general and capital punishment cases in particular. *See e.g. In re Winship*, 397 U.S. 358 [] (1970) (due process requirements in criminal proceedings) and *Gardner v. Florida*, 430 U.S. 349 [] (1977)(death is different). *Honda* does not stand for the proposition that due process requires comparative proportionality reviews of all civil judgments, much less, all criminal judgments; at most it stands for the proposition that due process requires some minimal safeguard ensuring that individual judgments are not excessive or disproportionate. *Honda* leaves open the form these safeguards might take. *Honda* held that a comparative proportionality review was required only

> because Oregon had no alternative means of safeguarding
> against excessive or disproportionate judgments.  512 U.S. 415,
> [430-32].

*Anderson v. State*, 932 S.W.2d 502, 508 (Tex. Crim. App. 1996).  Obviously, the issue in *Honda*—Oregon's departure from traditional procedures for judicial review of punitive damages awards—is entirely different from that at issue in Garza's case. While judicial review of punitive damages awards is the only procedural safeguard against a civil jury's arbitrary deprivation of property, *see Honda*, 512 U.S. at 432-33, judicial review of a capital sentencing jury's answers to punishment-phase issues would be redundant given the procedural safeguards discussed above that are already in place in the Texas statute to prevent the arbitrary imposition of the death penalty. *Pulley*, 465 U.S. at 49 ("[I]n light of the . . . safeguards in the Texas statute, proportionality review would [be] constitutionally superfluous.").

Finally, because appellate review of mitigating evidence has never been required, any recognition of Garza's claim on federal habeas review would require the announcement and retroactive application of a new rule of constitutional law in violation of *Teague, supra*. For these reasons, the state court's adjudication of this claim was reasonable, and this Court should refuse Garza's request to require the lower court to review the sufficiency of

the evidence to support the jury's negative answer to the mitigation special issue, and deny federal habeas relief.

### C. Garza's attempt to argue the mitigation issue requires a burden of proof has been rejected and is without merit. (Claim 7)

Garza next argues that the statutory "*Penry*" special issue fails to properly place the burden of proof regarding aggravating evidence on the State. Pet. 133-35. He specifically alleges a violation of the Texas Constitution. Pet. 133. But to the extent this claim is a challenge to the Texas courts following Texas procedures, it is a matter of state law and thus does not raise grounds upon which federal habeas relief may be granted.  A federal court does not "sit as a 'super' state supreme court in a habeas proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (citation omitted). In order for a federal writ to issue, there must be a violation of "the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Furthermore, the Fifth Circuit has clearly rejected this claim. *Granados v. Quarterman,* 455 F.3d 529, 536-37 (5th Cir. 2006); *Rowell v. Dretke,* 398 F.3d 370, 378 (5th Cir. 2005). "No Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof." *Rowell,* 398 F.3d at 378.

Indeed Garza's position would lead to absurd and unenforceable results. As the Supreme Court explained in *Penry v. Lynaugh,* 492 U.S. 302, 316-19 (1989) ("*Penry I*), "evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse."  492 U.S. at 319.  Thus, the definition of "mitigating" depends on what a "disadvantaged background" is, what emotional or mental problems consist of, and most importantly who is "less culpable." This is precisely why the Court excepted mitigating circumstances from the logic of *Ring*[6] and *Apprendi.*[7]

Indeed, the Court of Criminal Appeals has clearly, and correctly, rejected the idea that any evidence could be *per se* mitigating. *McFarland v. State,* 928 S.W.2d 482, 498 (Tex. Crim. App. 1996). The court explained that, "unlike a particular offense or defense ... which contains specific elements that must be met, ... the weighing of 'mitigating evidence' is a subjective determination undertaken by each individual juror." *Id*; *see also Colella v. State,* 915 S.W.2d 834, 844 (Tex. Crim. App. 1995) ("The amount of weight that the factfinder might give any particular piece of mitigating evidence is

---

[6]      *Ring v. Arizona,* 536 U.S. 584 (2002).
[7]      *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

left to 'the range of judgment and discretion' exercised by each juror")
(quoting *Banda v. State,* 890 S.W.2d 42, 54 (Tex. Crim. App. 1994)). While
the Constitution forbids "untrammeled discretion to *impose* the death
sentence," the "untrammeled discretion to *afford life* to a death eligible
defendant does not offend the United States Constitution." *Lawton v. State,*
913 S.W.2d 542, 558 (Tex. Crim. App. 1995); *see also Gregg v. Georgia,* 428
U.S. 153, 199 (1976) ("Nothing in any of our cases suggests that the decision
to afford an individual defendant mercy violates the Constitution").

In essence, accepting Garza's interpretation would punish the State of
Texas for doing exactly as it was told to do in *Penry I* — allow the jury open-
ended discretion to consider mitigating circumstances and impose a life
sentence if appropriate to the defendant and the crime. At the same time, the
application of *Ring* and *Apprendi* to the Eighth Amendment context of
mitigation would lead to impossible and absurd results by forcing the State to
*objectively* refute fundamentally *subjective* moral considerations urged to a
jury in defense of a man's life. Garza's argument is also untenable because
the absence of mitigating circumstances is not an element of the crime or a
sentencing aggravator that must be pled and proved by the State beyond a
reasonable doubt. Thus, the core Sixth Amendment principles of due process
and fair notice recognized in *Ring* and *Apprendi* are not implicated here.

Moreover, Garza's entire *Ring/Apprendi* argument is based on a fallacy, *i.e.,* the *absence* of mitigating circumstances amounts to an aggravating circumstance that increases the maximum penalty for capital murder. *Ring* and *Apprendi* are inapplicable to the Texas capital sentencing scheme for two reasons. First, the prescribed statutory maximum penalty for capital murder in Texas is death, and each element of the offense and aggravating sentencing factor was proved to the jury beyond a reasonable doubt. Thus, Garza was not denied fair notice or subject to an enhanced sentence based on judicial fact findings. Second, the absence of sufficient mitigating circumstances is not an element of capital murder and is not an *aggravating* fact that increases the penalty for capital murder. Rather, the presence of sufficient mitigating circumstances is plainly a *mitigating* fact which allows a defendant to *escape* the maximum penalty for capital murder. As a result, the Sixth Amendment rationale of *Ring* and *Apprendi* is inapposite to the instant case, and habeas relief should be denied.

Nevertheless, the mitigation special issue is not an element of the offense of capital murder nor is it an aggravating circumstance as defined by *Tuilaepa.*[8] Rather, the mitigation issue gives the jury a chance to make an

---

[8]    Analogously, this Court has held that "neither *Ring* and *Apprendi* nor *Atkins* [*v. Virginia,* 536 U.S. 304 (2002)] render the absence of mental retardation the functional equivalent of an element of capital murder which the [S]tate must prove

individualized determination of the offender's moral culpability, as the Supreme Court has repeatedly required. *Penry v. Johnson,* 532 U.S. 782, 797 (2001) ("*Penry II*"); *Penry I,* 492 U.S. at 316-19; *Eddings v. Oklahoma,* 455 U.S. 104, 111-12 (1982); *Woodson v. North Carolina,* 428 U.S. 280, 303-04 (1976). The Court has explained that such a determination need not be structured in any particular way, as long as the jury is allowed to judge for itself what is mitigating and in what way. *Franklin v. Lynaugh,* 487 U.S. 164, 179 (1988) (plurality opinion); *Mills v. Maryland,* 486 U.S. 367, 373-75 (1988); *Booth v. Maryland,* 482 U.S. 496, 502 (1987), *overruled on other grounds, Payne v. Tennessee,* 501 U.S. 808 (1991); *Zant v. Stephens,* 462 U.S. at 875-76.  The Texas mitigation special issue serves this constitutionally mandated function, instructing  the jury to consider all of the evidence — the circumstances of the offense, the defendant's character and background, and the general moral culpability of the defendant — and that it need not agree on what evidence supports an affirmative answer.  TEX. CODE CRIM. PROC. art 37.071 § 2(e) & (f); 3 CR 488. Thus, the mitigation issue confers upon the jury a broad ability to show leniency and *reduce* the defendant's sentence to

---

beyond a reasonable doubt." *In re Johnson,* 334 F.3d 403, 405 (5th Cir. 2003). This is because "the absence of mental retardation is not an element of the sentence any more than sanity is an element of an offense." *Id.*

life imprisonment.[4] *See Penry II*, 532 U.S. at 803 (approving the "brevity and clarity" of the current mitigation special issue as a catchall mitigation instruction).

For these reasons, and because the Fifth Circuit has expressly found no constitutional violation, Garza has not demonstrated the state courts unreasonably denied his claim in violation of clearly established federal law.

### D. The Constitution does not require jurors to be instructed regarding the effect of a single negative vote to the special issues. (Claim 8).

Garza next asserts that the Texas capital sentencing statute violates the Eighth and Fourteenth Amendments of the Constitution in that it fails to inform the jury that a single holdout juror results in a life sentence. Pet. 135-159. Specifically, he contends that the Eighth and Fourteenth Amendments require jurors to be instructed that a life sentence is automatically imposed if the jury is unable to respond unanimously to the special issues. *Id*.

Garza contends that the trial court's failure to explain the consequences of the jury's inability to reach a verdict on the special issues generates confusion among jurors and creates a danger that confused jurors will acquiesce to the "majority rules mentality" rather than hold out, thus

---

[4]     Similarly, "proof of mental retardation 'exempts' one from the death penalty, the maximum statutory punishment for capital murder." *Ex parte Briseno*, No. 29,819-03, 2004 WL 244826, *5 & n.36 (Tex. Crim. App. 2004).

violating the principles of the Eighth Amendment that protect him from cruel and unusual punishment. But this issue is foreclosed due to the Supreme Court's decision in *Jones v. United States*, wherein the Court explicitly rejected the theory that the Eighth Amendment requires jurors to be instructed as to the consequence of their failure to agree. 527 U.S. 373, 381-82 (1999).

In *Jones*, the Court first noted that petitioner's requested instruction-informing the jury regarding the consequences of a deadlock-was not essential to either of the functions constitutionally required in all capital sentencing schemes. That is, the instruction had no bearing on the "eligibility decision" of the sentencing process, nor did the failure to issue such an instruction prevent the jury from broadly inquiring into all constitutionally mitigating evidence, as required to make the "selection decision." *Id.* at 381. The Court also rejected the idea that the trial court, by neglecting to inform a jury regarding the consequences of its failure to reach a verdict, "affirmatively mislead[s] [the jury] regarding its role in the sentencing process." *Id.* at 281-82. The Court reasoned that an instruction informing the jury that a life sentence would be imposed if it could not reach a unanimous verdict had no bearing on the jury's role in the sentencing process. *Id.* Rather, such an instruction "speaks to what happens in the event that the jury is

unable to fulfill its role-when deliberations break down and the jury is unable to produce a unanimous sentence recommendation." Id.

Undaunted, Garza still contends that *Mills v. Maryland*, 486 U.S. 367 (1988), established that a constitutional violation occurs under the Texas scheme because reasonable jurors instructed pursuant to Article 37.071 are led to believe that ten jurors must agree to a "negative" response to a special issue in order to give effect to any mitigating circumstance. Thus, if only one juror was inclined to vote negatively in response to one of the special issues, it would be reasonable for that juror to conclude that his/her vote was meaningless and of no value unless nine other jurors joined them. He further submits that this creates an impermissible risk that such jurors will succumb to "majority rule" rather than hold out.

However, Garza's reliance upon *Mills* is misplaced. The Court reversed the death sentence in *Mills* because the jury instructions may have precluded the jury from considering mitigating evidence unless all twelve jurors agreed on the existence of a particular circumstance supported by that evidence. 486 U.S. at 384. "[E]ach juror [must] be permitted to consider and give effect to mitigating evidence when deciding the ultimate question of whether to vote for a sentence of death." *McKoy v. North Carolina*, 494 U.S. 433, 442-43 (1990). But the Texas statutory scheme is materially distinguishable from the

49

capital punishment statute that yielded the unconstitutional jury instruction in *Mills*. Whereas the Maryland jury deciding punishment in *Mills* was required to first determine the existence of specific mitigating factors before giving them effect by balancing them against the aggravating factors present, jurors in the instant case were permitted to individually take into account any mitigating circumstance when casting their vote on the special issues. *See Jacobs*, 31 F.3d at 29. That is, one juror could not preclude the entire jury from considering a mitigating circumstance. Thus, *Mills* is inapplicable. *Id*.

Further, the plain language of the jury instruction in the instant case does not support Garza's assertion that a reasonable juror would believe that an individual negative response was meaningless unless accompanied by similar responses from nine other jurors. The jury instructions clearly stated that the jury could not answer the first special issue "Yes" unless they agreed unanimously, and explained that the ten jurors needed for a "No" answer "need not agree on what particular evidence supports a 'No' answer to the issue." CR 21. Similarly, the jurors were instructed that they could not answer the second special issue "No" unless they agreed unanimously, and explained that the ten jurors needed for a "Yes" answer "need not agree on what particular evidence supports a 'Yes' answer." CR 222. With this knowledge, a reasonable juror could deduce, at a minimum, that a jury

50

verdict for a death sentence required unanimity-which one single "no" vote could defeat. Thus, even without the specific knowledge that the effect of a single "no" vote would result in the automatic imposition of a life sentence, a juror could reasonably find value and meaning in his or her individual vote.

Because neither the Eighth Amendment nor the Fourteenth Amendment necessitates a jury instruction regarding the consequences of a jury's inability to reach a unanimous verdict during capital sentencing hearings, this claim must fail. Furthermore, even if this claim had merit, the Fifth Circuit has repeatedly held that a claim challenging the "12-10" rule is barred under the non-retroactivity principle of *Teague*. *Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000); *Webb v. Collins*, 2 F.3d 93, 95-96 (5th Cir. 1993).

For all of these reasons, Garza has not stated a ground upon which this Court may grant relief, and this claim must be denied.

### E.     The Texas death penalty statute is not unconstitutional. (Claim 9).

In his final argument against the Texas capital sentencing statute, Garza argues that it violates the Eighth and Fourteenth Amendments because it requires the jury to predict future dangerousness. Pet. at 160-64. Garza asserts that such a prediction by a jury cannot be accurate. *Id.* But,

"[t]he Supreme Court has never intimated that the factual correctness of the jury's prediction on the issue of future dangerousness, either in a particular case or over time, bears upon the constitutionality of the Texas capital sentencing statute." *Lincecum v. Collins*, 958 F.2d 1271, 1281 (5th Cir. Tex. 1992). Garza points to no intervening change in the law. As such, the state courts' denial of his claim is reasonable and relief should be denied.

## VI.  Despite Garza's Claim to the Contrary the Presumption of Correctness Applies.

In his final claim, Garza asserts that because the state habeas court merely signed off on the State's proposed findings the deferential federal habeas standard of review should not be applied. Pet. at 164-69. But Garza's petition is subject to review under the amendments to the federal habeas corpus statutes embodied in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997). Under AEDPA, the lower court "may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State Court proceeding.'"*Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2) (West 2002)).

The Supreme Court has explained that a state-court decision is "contrary" to established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Court's] cases," or confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent, yet reaches an opposite result. *(Terry) Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hernandez v. Garza*, 248 F.3d 344, 346 (5th Cir. 2001). Alternatively, a state court "unreasonably applies" clearly established federal law if it correctly identifies the governing precedent from the Supreme Court's precedents but unreasonably applies it to the facts of a particular case. *Williams,* 529 U.S. at 407-09; *Hernandez*, 248 F.3d at 346.

A federal habeas court's inquiry into unreasonableness should be objective rather than subjective, and a court should not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Williams*, 529 U.S. at 409-11; *Tucker v. Garza*, 242 F.3d 617, 620-21 (5th Cir. 2001). Rather, federal habeas relief is only merited where the state court decision is both incorrect and objectively unreasonable. *Williams*,

529 U.S. at 411; *Martin v. Cain*, 246 F.3d 471, 476 (5th Cir. 2001). In other words, habeas relief is inappropriate when a state court, at a minimum, reaches a "satisfactory conclusion." *Williams,* 529 U.S. at 410-11 (citing *Wright v. West*, 505 U.S. 277, 287 (1992)).

Further, the Fifth Circuit has held that it is the state court's "ultimate decision" that is to be tested for unreasonableness, "not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001); *see Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (holding that a federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence"); *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (applying AEDPA deferential standard of review where state habeas writ was denied without explanation). Indeed, state courts are presumed to know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). And, even where the state court fails to cite to applicable Supreme Court precedent or is unaware of such precedent, the AEDPA deferential standard of review nevertheless applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]. " *Early v. Packer*, 537 U.S. 3, 8 (2002).

Despite the clear intent of Congress to require deferential habeas review and this Court's holdings that the standard generally applies, Garza argues that the state court's factual findings are not entitled to deference because the court adopted the State's proposed findings verbatim. But the habeas court's adoption of the State's proposed findings verbatim does not destroy the deference accorded by AEDPA. The fact that the district attorney might have drafted the findings, a not uncommon practice, is irrelevant. This Court has consistently held that it is not improper for a state habeas court to adopt a party's proposed findings. *Trevino v. Johnson,* 168 F.3d 173, 180 (5th Cir. 1999); *Nichols v. Scott,* 69 F.3d 1255, 1277 (5th Cir. 1995). As this Circuit has indicated, "it can be assumed that the judge reviewed the submissions of both parties, reviewed the records of the underlying trial, and reflected upon his own impressions and firsthand knowledge of the events that took place at trial." *James v. Collins*, 987 F.2d 1116, 1123 (5th Cir. 1993); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 572 (1985) ("even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous"). If federal courts are to infer that an unconscionable breakdown occurred because the state habeas court merely adopted the proposed findings of fact and conclusions of law advanced by the State,  rather than drafting its own

55

identical or nearly identical document, not only would this reflect doubt regarding the capabilities of the Texas court as a fair and competent forum for the adjudication of federal constitutional rights, but would also place the federal courts in the position of dictating to the state courts that they must issue opinions in a particular format lest they be "second guessed" by the federal courts. The Supreme Court has pointedly instructed that federal courts "have no power to tell state courts how they must write their opinions." *Coleman v. Thompson*, 501 U.S. 722, 739 (1991). Convinced that the State's position was correct, there was nothing improper in the court's adopting as its own the findings submitted by the prosecutor for the court's consideration. Therefore, absent a showing of misconduct on the part of the court, its acceptance of the district attorney's proposed findings reflects nothing more than agreement with those findings.

## CONCLUSION

For the foregoing reasons, Garza's petition for writ of habeas corpus should be denied.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

56

DANIEL T. HODGE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Postconviction Litigation Division


　/s/ Ellen Stewart-Klein
ELLEN STEWART-KLEIN
Assistant Attorney General
State Bar No. 24028011

P.O. Box 12548, Capitol Station
Austin, Texas  78711-2548
(512) 936-1400
(512) 320-8132 (Fax)
*E-mail: ellen.stewart-klein@texasattorneygeneral.gov*

*Lead Counsel                          ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I certify that on March 26, 2012, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who have consented in writing to accept this Notice as service of this document by electronic means:

Michael C. Gross
106 South St. Mary's Street
Suite 260
San Antonio, TX 78205


  /s/ Ellen Stewart-Klein
ELLEN STEWART-KLEIN
Assistant Attorney General

58