express the conscience of the community on the ultimate question of life or death).

On numerous occasions, the Fifth Circuit has expressly rejected the legal premise underlying petitioner's eighth claim herein, i.e., the argument a Texas capital murder defendant is constitutionally entitled to have his punishment-phase jury instructed regarding the consequences of a hung jury or a single holdout juror. *See, e.g., Hughes v. Dretke,* 412 F.3d 582, 593-94 (5th Cir. 2005)(holding the same arguments underlying petitioner's eighth claim herein were so legally insubstantial as to be unworthy of a certificate of appealability), *cert. denied,* 546 U.S. 1177 (2006); *Alexander v. Johnson,* 211 F.3d 895, 897-98 (5th Cir. 2000)(holding the *Teague v. Lane* non-retroactivity doctrine precluded applying such a rule in a federal habeas context); *Davis v. Scott,* 51 F.3d 457, 466-67 (5th Cir. 1995)(holding the same), *cert. denied,* 516 U.S. 992 (1995); *Jacobs v. Scott,* 31 F.3d 1319, 1328-29 (5th Cir. 1994)(rejecting application of the Supreme Court's holding in *Mills v. Maryland* to a Texas capital sentencing proceeding), *cert. denied,* 513 U.S. 1067 (1995).

Petitioner's reliance upon the Supreme Court's holding in *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), is misplaced.  In *Caldwell,* the Supreme Court addressed an instance in which a capital murder prosecutor's jury

218

argument suggested, in an erroneous and misleading manner, the
jury was *not* the final arbiter of the defendant's fate.[269]   To
establish a *Caldwell* violation, "a defendant necessarily must
show that the remarks to the jury improperly described the role
assigned to the jury by local law." *Dugger v. Adams*, 489 U.S.
401, 407, 109 S.Ct. 1211, 1215, 103 L.Ed.2d 435 (1989).   Both the
Fifth Circuit and this Court have repeatedly rejected efforts
identical to petitioner's to shoe-horn the Supreme Court's
holding in *Caldwell v. Mississippi*, into the wholly dissimilar
context of a Texas capital trial. *See, e.g., Turner v.
Quarterman*, 481 F.3d at 300 (recognizing Fifth Circuit precedent
foreclosed arguments the Eighth Amendment and Due Process Clause
of the Fourteenth Amendment mandated jury instructions regarding
the effect of a capital sentencing jury's failure to reach a
unanimous verdict); *Alexander v. Johnson*, 211 F.3d at 897 n.5
(holding the same); *Moore v. Quarterman*, 526 F.Supp.2d 654, 729-
30 (W.D. Tex. 2007)(holding there is no constitutional
requirement that a capital sentencing jury be informed of the

---

[269] In *Caldwell*, the Supreme Court held the following
statement by the prosecution during its closing argument
undermined reliable exercise of jury discretion:
> Now, [the defense] would have you believe that you're
> going to kill this man and they know--they know that
> your decision is not the final decision.  My God, how
> unfair can they be?  Your job is reviewable.  They know
> it.

*Caldwell v. Mississippi*, 472 U.S. at 325 & 329, 105 S.Ct. at 2637
& 2639.

consequences of a hung jury or of a single holdout juror), *CoA denied*, 534 F.3d 454 (5th Cir. 2008); *Blanton v. Quarterman*, 489 F.Supp.2d 621, 644-45 (W.D. Tex. 2007)(holding the same), *affirmed*, 543 F.3d 230 (5th Cir. 2008), *cert. denied*, ___ U.S. ___, 129 S.Ct. 2383, 173 L.Ed.2d 1301 (2009); *Martinez v. Dretke*, 426 F.Supp.2d at 534-36 (holding the same).

Likewise, petitioner reliance upon the Supreme Court's holdings in *McKoy* and *Mills* is unpersuasive.  Petitioner's argument that the Texas twelve-ten rule violates the due process principles set forth in these opinions has repeatedly been rejected by both the Fifth Circuit and this Court. See *Blue v. Thaler*, 665 F.3d 647, 669-70 (5th Cir. 2011)(rejecting an Eight Amendment challenge to the Texas twelve-ten rule), *cert*. denied, ___ U.S. ___, 133 S.Ct. 105, ___ L.Ed.2d ___ (2012); *Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000) (specifically rejecting both Fourteenth and Eighth Amendment challenges to the Texas twelve-ten rule in the course of affirming this Court's rejection of claims virtually identical to those raised by petitioner herein); *Miller v. Johnson*, 200 F.3d 274, 288-89 (5th Cir. 2000)(holding *Mills* inapplicable to a Texas capital sentencing proceeding), *cert. denied*, 531 U.S. 849 (2000); *Woods v. Johnson*, 75 F.3d 1017, 1036 (5th Cir. 1996)(holding the same), *cert. denied*, 519 U.S. 854 (1996); *Hughes v. Johnson*, 191 F.3d 607, 628-29 (5th Cir. 1999)(holding both *Mills* and *McKoy*

220

inapplicable to the Texas capital sentencing scheme), *cert.*
*denied*, 528 U.S. 1145 (2000); *Jacobs v. Scott*, 31 F.3d 1319,
1328-29 (5th Cir. 1994)("Under the Texas system, all jurors can
take into account any mitigating circumstance.  One juror cannot
preclude the entire jury from considering a mitigating
circumstance.  Thus, *Mills* is inapplicable."), *cert. denied*, 513
U.S. 1067 (1995); *Bartee v. Quarterman*, 574 F.Supp.2d at 700-01
(rejecting reliance upon *Mills* and *McKoy* as bases for challenging
the very different Texas capital sentencing scheme).

  Because the Texas capital sentencing scheme is vastly
different from those employed on Maryland and North Carolina,
petitioner's reliance on the Supreme Court's opinions in *McKoy*
and *Mills* is misplaced. *See Alexander v. Johnson*, 211 F.3d 895,
897 (5th Cir. 2000)(specifically rejecting both Fourteenth and
Eighth Amendment challenges to the Texas twelve-ten rule in the
course of affirming this Court's rejection of claims identical to
those raised by petitioner herein); *Miller v. Johnson*, 200 F.3d
274, 288-89 (5th Cir. 2000)(holding *Mills* inapplicable to a Texas
capital sentencing proceeding), *cert. denied*, 531 U.S. 849
(2000); *Woods v. Johnson*, 75 F.3d 1017, 1036 (5th Cir.
1996)(holding the same), *cert. denied*, 519 U.S. 854 (1996); and
*Jacobs v. Scott*, 31 F.3d at 1328-29 (holding the same).

  Petitioner's reliance upon a number of Supreme Court
opinions from the state of South Carolina is likewise

unpersuasive.   In *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), the Supreme Court addressed capital sentencing in South Carolina and other jurisdictions which authorized capital sentencing juries to impose sentences of either death or life without the possibility of parole. *See Simmons v. South Carolina*, 512 U.S. at 168-69 & n.8, 114 S.Ct. at 2196 & n.8 (plurality opinion specifically explaining that, as of that date, Texas courts traditionally kept capital sentencing juries unaware of the availability of parole for those sentenced to serve terms of life imprisonment).   Representing the views of three members of the Supreme Court, Justice O'Connor's concurring opinion in *Simmons* is significant because it emphasized South Carolina law provided a capital defendant faced the possibility of life without parole. *Id.*, 512 U.S. at 176-78, 114 S.Ct. at 2200-01 (concurring opinion).

The Supreme Court's subsequent opinion in *Ramdass v. Angelone*, 530 U.S. 156, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000), continued the vitality of this distinction, as the Supreme Court plurality specifically limited the holding in *Simmons* to "only those instances where, as a legal matter, there is no possibility of parole if the jury decides the appropriate sentence is life in prison." *Id.*, 530 U.S. at 169, 120 S.Ct. at 2121.   In her separate, pivotal, concurring, opinion in *Ramdass*, Justice O'Connor once again emphasized her view of the continued vitality

of the rule in *Simmons*, as enunciated by the plurality in *Ramdass*, and also pointed out *Ramdass* came before the Supreme Court in the context of a federal habeas corpus proceeding, in which the Supreme Court's review, like this Court's review in the present cause, is circumscribed by the terms of the AEDPA. *Id.*, 530 U.S. at 179, 120 S.Ct. at 2126 (concurring opinion).

More recently, the Supreme Court's opinion in *Shafer v. South Carolina*, 532 U.S. 36, 121 S.Ct. 1263, 149 L.Ed.2d 178 (2001), at least implicitly acknowledged the continued vitality of the distinction first noted in *Simmons* by holding South Carolina's new capital sentencing scheme was guilty of the same constitutional defect identified in *Simmons because*, at least under some circumstances, the sentencing jury would be faced with a choice between a sentence of death and a sentence of life without the possibility of parole. *See Shafer v. South Carolina*, 532 U.S. at 51, 121 S.Ct. at 1273 ("We therefore hold that whenever future dangerousness is at issue in a capital sentencing proceeding under South Carolina's new scheme, due process requires that the jury be informed that a life sentence carries no possibility of parole.").

In *Kelly v. South Carolina*, 534 U.S. 246, 122 S.Ct. 726, 151 L.Ed.2d 670 (2002), the Supreme Court reiterated its holding in *Shafer*, emphasizing once again South Carolina capital sentencing juries which unanimously found the presence of an aggravating

circumstances were left to select between one of only two possible sentences: death or life imprisonment without the possibility of parole. *Kelly v. South Carolina*, 534 U.S. at 252 & n.2, 122 S.Ct. at 730 & n.2.

While Texas has recently joined South Carolina and other jurisdictions which provide capital sentencing juries the option of sentencing a convicted capital murderer to a term of life without parole, at the time of petitioner's offense and trial, Texas law did not provide for a sentence of life imprisonment without the possibility of parole. The Supreme Court's Fourteenth Amendment jurisprudence, including *Simmons*, *Ramdass*, *Shafer*, and *Kelly*, makes an express distinction between the rule applied in *Simmons* and *Shafer* and the due process requirements in jurisdictions such as Texas at the time of petitioner's crime and capital murder trial, where sentences of either death or life without parole were *not* the only choices facing a capital sentencing jury. The legal premise underlying this aspect of petitioner's arguments underlying his eighth claim herein ignores this critical distinction. There is simply no "clearly established" federal law, as enunciated by the United States Supreme Court, holding the Fourteenth Amendment's Due Process Clause required potential jurors at the time of petitioner's capital murder trial to be informed of the impact of a single

holdout juror on any of the Texas capital sentencing special issues.

On the contrary, the Supreme Court has established the constitutional standard for evaluating the propriety of a jury instruction at the punishment phase of a capital murder trial is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990).  The Supreme Court has consistently applied this standard to evaluate challenges to punishment-phase jury instructions. *See Weeks v. Angelone*, 528 U.S. 225, 226, 120 S.Ct. 727, 729, 145 L.Ed.2d 727 (2000)(emphasizing the *Boyde* test requires a showing of a reasonable likelihood, as opposed to a mere possibility, the jury construed the jury instructions to preclude its consideration of relevant mitigating evidence); *Jones v. United States*, 527 U.S. 373, 390 & n.9, 119 S.Ct. 2090, 2102-03 & n.9, 144 L.Ed.2d 370 (1999)(holding the same); *Calderon v. Coleman*, 525 U.S. 141, 146, 119 S.Ct. 500, 503, 142 L.Ed.2d 521 (1998)(holding the same); *Buchanan v. Angelone*, 522 U.S. 269, 276, 118 S.Ct. 757, 761, 139 L.Ed.2d 702 (1998)(holding the same); *Johnson v. Texas*, 509 U.S. 350, 367, 113 S.Ct. 2658, 2669, 125 L.Ed.2d 290 (1993)(holding *Boyde* requires a showing of a reasonable likelihood the jury interpreted the jury instructions

so as to preclude it from considering relevant mitigating evidence).

This "reasonable likelihood" standard does not require the petitioner to prove the jury "more likely than not" interpreted the challenged instruction in an impermissible way; however, the petitioner must demonstrate more than "only a possibility" of an impermissible interpretation. *Johnson v. Texas*, 509 U.S. at 367, 113 S.Ct. at 2669; *Boyde v. California*, 494 U.S. at 380, 110 S.Ct. at 1198.  This Court must analyze the challenged language included in the jury charge within the context of the overall jury charge. *Cupp v. Naughten*, 414 U.S. 141, 146-47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).  "In evaluating the instructions, we do not engage in a technical parsing of this language of the instructions, but instead approach the instructions in the same way that the jury would--with a 'commonsense understanding of the instructions in the light of all that has taken place at the trial.'" *Johnson v. Texas*, 509 U.S. at 368, 113 S.Ct. at 2669; *Boyde v. California*, 494 U.S. at 381, 110 S.Ct. at 1198.

Nothing in petitioner's punishment-phase jury charge can reasonable be construed as foreclosing the consideration by petitioner's jury of any of the potentially mitigating evidence actually presented during petitioner's capital murder trial. None of petitioner's jurors could rationally have been led to

226

believe by petitioner's punishment-phase jury charge that either
(1) they lacked the authority to answer either of the Texas
capital special issues in a manner consistent with their
conscience and the evidence regardless of the votes of other
jurors or (2) their determination to vote in a manner
inconsistent with other jurors would have no legal impact.  Thus,
there is no reasonable likelihood any of petitioner's jurors
construed their punishment phase jury instructions in a manner
which prevented them from considering or giving effect to any
constitutionally relevant mitigating evidence.

Likewise, nothing in petitioner's punishment-phase jury
charge misled petitioner's capital sentencing jury regarding its
role as the ultimate arbiter of petitioner's fate.  Insofar as
petitioner complains that his jury was not specifically
instructed that a failure by the jury to answer either of Texas
capital sentencing issue (based upon the jury's inability to
reach unanimity in favor of answers favorable to the prosecution
or to marshal at least ten votes for answers favorable to the
defense), that argument is foreclosed by both Supreme Court and
Fifth Circuit precedent recognizing there is no constitutional
right to jury instructions instructing individual jurors how they
can achieve a "hung jury." *See Jones v. United States*, 527 U.S.
at 382, 119 S.Ct. at 2099 (the Eighth Amendment does *not* require
a capital sentencing be instructed as the effect of a "breakdown

227

in the deliberative process," because (1) the refusal to give
such an instruction does not affirmatively mislead the jury
regarding the effect of its verdict and (2) such an instruction
might well undermine the strong governmental interest in having
the jury express the conscience of the community on the ultimate
question of life or death); *Druery v. Thaler*, 647 F.3d 535, 544
(5th Cir. 2011)(holding an argument that a Texas capital
defendant had a constitutional right to an instruction informing
the jury of the impact of a hung jury barred under the non-
retroactivity doctrine of *Teague v. Lane*), *cert. denied*, ___ U.S.
___, 132 S.Ct. 1550, 182 L.Ed.2d 180 (2012); *Turner v.
Quarterman*, 481 F.3d 292, 300 (5th Cir.) (recognizing Fifth
Circuit precedent foreclosed arguments the Eighth Amendment and
Due Process Clause of the Fourteenth Amendment mandated jury
instructions regarding the effect of a capital sentencing jury's
failure to reach a unanimous verdict), *cert. denied*, 551 U.S.
1193 (2007); *Barrientes v. Johnson*, 221 F.3d 741, 776-78 (5th
Cir. 2000)(holding trial court's voir dire instructions informing
jury the court would impose sentence, not the jury, but
specifically explaining how the jury's answers to the capital
sentencing special issues would require the court to impose
either a sentence of life or death did not result in a *Caldwell*
violation), *cert. denied*, 531 U.S. 1134 (2001); *Hughes v.
Johnson*, 191 F.3d 607, 618 (5th Cir. 1999)(holding voir dire

228

explanations to potential jurors of the impact of affirmative answers to the Texas capital sentencing special issues were sufficient to avoid any possibility the jurors misunderstood their role or the effect of their punishment-phase verdict), *cert. denied*, 528 U.S. 1145 (2000); *Alexander v. Johnson*, 211 F.3d 895, 897 n.5 (5th Cir. 2000)(holding the same).

This Court has likewise repeatedly rejected the constitutional arguments underlying petitioner's eighth claim herein. *See Jasper v. Thaler*, 765 F.Supp.2d at 838-39 (there is no constitutional right to a jury instruction informing the jurors of the effect of a hung jury or a single hold-out juror); *Bartee v. Quarterman*, 574 F.Supp.2d at 702-03 (holding there is no constitutional right to have a capital sentencing jury informed of the effect of a hung jury); *Moore v. Quarterman*, 526 F.Supp.2d 654, 729-30 (W.D. Tex. 2007)(holding there is no constitutional requirement that a capital sentencing jury be informed of the consequences of a hung jury or of a single holdout juror), *CoA denied*, 534 F.3d 454 (5th Cir. 2008); *Blanton v. Quarterman*, 489 F.Supp.2d 621, 644-45 (W.D. Tex. 2007)(holding the same), *affirmed*, 543 F.3d 230 (5th Cir. 2008), *cert. denied*, ___ U.S. ___, 129 S.Ct. 2383, 173 L.Ed.2d 1301 (2009); *Martinez v. Dretke*, 426 F.Supp.2d at 534-36 (holding the same).

There is no arguable legal merit to any of the petitioner's constitutional arguments in support of his eighth claim in this

cause.  The petitioner's punishment-phase jury charge accurately informed petitioner's capital sentencing jury of their responsibility under Texas law to reach a verdict favorable to the prosecution only if they agreed unanimously on both of the Texas capital sentencing special issue and to return a verdict favorable to the defense on either of those special issue only if ten or more jurors agreed to do so.  The Constitution's Eighth and Fourteenth Amendments required nothing more.  Insofar as petitioner argues otherwise, his arguments herein amount to advocacy of a "new rule" of federal constitutional criminal procedure and are foreclosed by the *Teague* non-retroactivity doctrine.

4.   <u>Conclusions</u>

Petitioner's eighth claim advocates adoption of a new rule of constitutional criminal procedure and is foreclosed by the principle announced in *Teague v. Lane*.  There is no clearly established federal legal rule mandating jury instructions advising the jury of the effect of a hung jury or a single holdout juror at the punishment phase of a Texas capital trial prior to the adoption by the State of Texas of a "life without parole" sentencing option.

The Texas Court of Criminal Appeals' rejection on the merits during the course of petitioner's first state habeas corpus proceeding of the constitutional arguments underlying

petitioner's eighth claim herein was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor based upon an unreasonable determination of the facts in light of the evidence presented in the petitioner's trial, direct appeal, and first state habeas corpus proceedings. Petitioner's eighth claim herein does not warrant federal habeas corpus relief.

G.   Unreliability of Predictiions of Future Dangerousness

  1.   The Claim

  In his ninth and final claim herein, petitioner argues the inherent unreliability of predictions of a criminal defendant's propensity for future violent misconduct renders the Texas capital sentencing scheme's first special issue unconstitutional.[270]

  2.   State Court Disposition

  Petitioner raised this same argument for the first time as his eleventh ground for relief in his first state habeas corpus application.[271]  The state habeas trial court held petitioner procedurally defaulted on this complaint by failing to raise the same arguments on direct appeal and, alternatively, rejected the

_____

[270] Amended Petition, at pp. 160-64.

[271] First State Habeas Transcript, at pp. 99-104.

231

claim on the merits.[272]   The Texas Court of Criminal Appeals adopted those conclusions when it rejected petitioner's first state habeas corpus application on the merits. *Ex parte Manuel Garza*, 2008 WL 5245545, at *1.

Petitioner re-urged the same argument as his ninth claim for relief in his second state habeas corpus application.[273]   The Texas Court of Criminal Appeals dismissed petitioner's second state habeas corpus application based upon state writ-abuse principles. *Ex parte Manuel Garza*, 2011 WL 4826968, at *1.

3.   <u>AEDPA Review</u>

The Supreme Court implicitly rejected the petitioner's ninth claim herein when it held as follows in *Jurek v. Texas*:

> Focusing on the second statutory question that Texas requires a jury to answer in considering whether to impose a death sentence, the petitioner argues that it is impossible to predict future behavior and that the question is so vague as to be meaningless.  It is, of course, not easy to predict future behavior.  The fact that such a determination is difficult, however, does not mean that it cannot be made.  Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system.  The decision whether to admit a defendant to bail, for instance, must often turn on a judge's prediction of the defendant's future conduct. And any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose.  For those sentenced to prison, these same predictions must be made by parole authorities.  The task that a Texas jury must perform in answering the statutory question

---

[272] First State Habeas Transcript, at p. 236.

[273] Second State Habeas Transcript, at pp. 407-11.

in issue is thus basically no different from the task
performed countless times each day throughout the
American system of criminal justice.  What is essential
is that the jury have before it all possible relevant

information about the individual defendant whose fate
it must determine.  Texas law clearly assures that all such evidence

Jurek v. Texas, 428 U.S. at 274-76, 96 S.Ct. at 2957-58
(*Footnotes omitted*).

The Fifth Circuit has likewise at least implicitly rejected
the underpinnings of the petitioner's ninth claim herein. *See
Lincecum v. Collins*, 958 F.2d 1271, 1281 (5th Cir. 1992): "The
Supreme Court has never intimated that the factual correctness of
the jury's prediction on the issue of future dangerousness,
either in a particular case or over time, bears upon the
constitutionality of the Texas capital sentencing statute."

This Court's independent research has disclosed no legal
authority declaring the practical difficulty with predicting
future violence by a criminal defendant, i.e., accurately
answering the first capital sentencing special issue, renders
capital sentencing as practiced in Texas inherently
unconstitutional.  On the contrary, given the broad scope of the
Texas capital sentencing scheme's mitigation special issue, the
Supreme Court's opinions discussing the nature of the Texas
capital sentencing scheme suggest the Texas capital sentencing
scheme's future dangerousness special issue may be
constitutionally superfluous. *See Johnson v. Texas*, 509 U.S. at
362, 113 S.Ct. at 2666 (the Texas capital sentencing scheme

233

accomplishes the eligibility determination, i.e., the constitutionally mandated "narrowing function," at the guilt-innocence phase of trial); *Jurek v. Texas*, 428 U.S. at 270-71, 96 S.Ct. at 2956 (holding the same).  "[T]here is no constitutional requirement of unfettered sentencing discretion in the jury, and States are free to structure and shape consideration of mitigating evidence 'in an effort to achieve a more rational and equitable administration of the death penalty.'" *Johnson v. Texas*, 509 U.S. at 362, 113 S.Ct. at 2666 (*quoting Boyde v. California*, 494 U.S. at 377, 110 S.Ct. at 1196).  "We have never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required." *Kansas v. Marsh*, 549 U.S. at 175, 126 S.Ct. at 2525 (*quoting Franklin v. Lynaugh*, 487 U.S. at 179, 108 S.Ct. at 2330).

Because no federal court has ever declared the Texas capital sentencing scheme's future dangerousness special issue inherently unconstitutionally unreliable, adoption of the rule advocated by petitioner in his final claim herein is a "new rule" of constitutional criminal procedure which is foreclosed by the principle announced in *Teague v. Lane, supra.*

4.   Conclusions

Adoption of the new rule advocated by petitioner in his ninth claim herein is foreclosed by the non-retroactivity principle of *Teague v. Lane*.  There is no clearly established federal legal authority precluding Texas capital sentencing juries from answering the future dangerousness special as currently configured within the Texas capital sentencing statute.

The Texas Court of Criminal Appeals' rejection on the merits during the course of petitioner's first state habeas corpus proceeding of the arguments underlying petitioner's ninth claim herein was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor based upon an unreasonable determination of the facts in light of the evidence presented in the petitioner's trial, direct appeal, and first state habeas corpus proceedings.  Petitioner's ninth claim herein does not warrant federal habeas corpus relief.

### VIII. Request for Evidentiary Hearing

Petitioner has requested an evidentiary hearing to develop new facts and new evidence relevant to petitioner's claims herein.  Petitioner is not entitled to an evidentiary hearing to develop new facts and new evidence in support of those of his claims which the state habeas court rejected on the merits. *See*

*Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S.Ct. 1388, 1398-1400, 179 L.Ed.2d 557 (2011)(holding an evidentiary hearing is unnecessary when a state court has rejected a claim on the merits and federal habeas review of that rejection is governed by §2254(d)(1)); *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011)(holding the same), *cert. denied*, ___ U.S. ___, 132 S.Ct. 1100, 181 L.Ed.2d 987 (2012).  Thus, petitioner is not entitled to a federal evidentiary hearing on his first, second, and fourth through ninth claims herein.

In addition, this Court has independently reviewed petitioner's ineffective assistance complaints contained in his third claim herein and finds petitioner has failed to allege sufficient specific facts to satisfy either prong of *Strickland* analysis on any of those claims.  Petitioner is not entitled to an evidentiary hearing on his *Wiggins* claim, i.e., his complaint that his trial counsel rendered ineffective assistance by failing to adequately investigate petitioner's background and present additional mitigating evidence establishing the extremely abused and deprived circumstances of petitioner's childhood.  After having reviewed the entirety of petitioner's purportedly "new" mitigating evidence, this Court has concluded petitioner has alleged no facts in support of this claim which, if proved, would satisfy the either prong of *Strickland*.  The remainder of petitioner's claims herein are those which, by their very nature,

236

require no new factual development, i.e., they are challenges to the state trial court's evidentiary or procedural rulings or present purely legal challenges to the Texas capital sentencing scheme.  Such claims must be evaluated based upon the record as it existed at the time of trial.  Further factual development of such claims at this juncture is unnecessary.  Thus, petitioner is not entitled to a federal evidentiary hearing to develop new facts and new evidence supporting any of his claims herein.

## IX. Certificate of Appealability

The AEDPA converted the "certificate of probable cause" previously required as a prerequisite to an appeal from the denial of a petition for federal habeas corpus relief into a "Certificate of Appealability" ("CoA"). *See Hill v. Johnson*, 114 F.3d 78, 80 (5th Cir. 1997)(recognizing the "substantial showing" requirement for a CoA under the AEDPA is merely a change in nomenclature from the CPC standard); *Muniz v. Johnson*, 114 F.3d 43, 45 (5th Cir. 1997)(holding the standard for obtaining a CoA is the same as for a CPC).  The CoA requirement supersedes the previous requirement for a certificate of probable cause to appeal for federal habeas corpus petitions filed after the effective date of the AEDPA. *Robison v. Johnson*, 151 F.3d 256, 259 n.2 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999); *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997), *cert. denied sub nom. Monroe v. Johnson*, 523 U.S. 1041 (1998).

237

Effective December 1, 2009, Rule 11(a) of the Rules Governing Section 2254 Cases in United States District Courts requires this Court to issue or deny a CoA when it enters an order adverse to a federal habeas corpus petitioner.

Under the AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under Section 2254, the petitioner must obtain a CoA. *Miller-El v. Johnson*, 537 U.S. 322, 335-36, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); 28 U.S.C. §2253(c)(2).  Likewise, under the AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002)(holding a CoA is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *Jones v. Cain*, 227 F.3d 228, 230 n.2 (5th Cir. 2000)(holding the same); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997)(holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted).  In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted alone. *Crutcher v. Cockrell*, 301 F.3d at 658 n.10; *Lackey v. Johnson*, 116 F.3d at 151; *Hill v. Johnson*, 114 F.3d at 80; *Muniz v. Johnson*, 114 F.3d at 45; *Murphy v. Johnson*, 110 F.3d 10, 11 n.1 (5th Cir. 1997); 28 U.S.C. §2253(c)(3).

A CoA will not be granted unless the petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S.Ct. 2562, 2569, 159 L.Ed.2d 384 (2004); *Miller-El v. Johnson*, 537 U.S. at 336, 123 S.Ct. at 1039; *Slack v. McDaniel*, 529 U.S. 473, 483, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983).

To make such a showing, the petitioner need *not* show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard v. Dretke*, 542 U.S. at 282, 124 S.Ct. at 2569; *Miller-El v. Johnson*, 537 U.S. at 336, 123 S.Ct. at 1039; *Slack v. McDaniel*, 529 U.S. at 484, 120 S.Ct. at 1604; *Barefoot v. Estelle*, 463 U.S. at 893 n.4, 103 S.Ct. at 3394 n.4. This Court is required to issue or deny a CoA when it enters a final Order such as this one adverse to a federal habeas petitioner. *Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts*.

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim. If this Court rejects a prisoner's constitutional claim on the merits, the petitioner must

239

demonstrate reasonable jurists could find the court's assessment of the constitutional claim to be debatable or wrong.   "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Johnson*, 537 U.S. at 338, 123 S.Ct. at 1040 (*quoting Slack v. McDaniel*, 529 U.S. at 484, 120 S.Ct. at 1604). *Accord Tennard v. Dretke*, 542 U.S. at 282, 124 S.Ct. at 2569.   In a case in which the petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, the petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* whether this Court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. at 484, 120 S.Ct. at 1604 (holding when a district court denies a habeas claim on procedural grounds, without reaching the underlying constitutional claim, a CoA may issue only when the petitioner shows that reasonable jurists would find it debatable whether (1) the claim is a valid assertion of the denial of a constitutional right and (2) the district court's procedural ruling was correct).

In death penalty cases, any doubt as to whether a CoA should issue must be resolved in the petitioner's favor. *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir.), *cert. denied*, ___ U.S. ___, 130 S.Ct. 536, 175 L.Ed.2d 350 (2009); *Moore v. Quarterman*, 534 F.3d 454, 460 (5th Cir. 2008); *Foster v. Quarterman*, 466 F.3d at 364; *Dickson v. Quarterman*, 462 F.3d 470, 476 (5th Cir. 2006); *Pippin v. Dretke*, 434 F.3d at 787; *Bridgers v. Dretke*, 431 F.3d 853, 861 (5th Cir. 2005), *cert. denied*, 548 U.S. 909 (2006).

Nonetheless, a CoA is not automatically granted in every death penalty habeas case. *See* Miller-El v. Cockrell 537 U.S. at 337, 123 S.Ct. at 1040 ("It follows that issuance of a COA must not be *pro forma* or a matter of course."); *Sonnier v. Quarterman*, 476 F.3d at 364-69 (denying CoA on a wide variety of challenges to the Texas capital sentencing scheme).

Reasonable minds could not disagree over this Court's conclusions as to petitioner's first, second, and fourth claims herein.  Petitioner failed to allege any facts showing he was harmed by the substitution of his lead trial counsel almost two months prior to the commencement of voir dire.  Petitioner's second and fourth claims herein are foreclosed by state appellate and state habeas court conclusions on matters of state procedural or evidentiary law, matters committed to the province of the state courts.

This Court independently reviewed the entire record from petitioner's trial, direct appeal, and multiple state habeas corpus proceedings and concluded petitioner's ineffective assistance complaints all fail to satisfy either prong of the *Strickland* test.   Even if it were possible to quibble over this Court's analysis of the first prong of the *Strickland* test, petitioner has alleged no facts showing he was prejudiced within the meaning of *Strickland* by any of his trial counsels' allegedly deficient performance.   Petitioner's trial counsel helped select a jury which could reasonably have been believed to include multiple members who were reluctant to impose the death penalty and one who expressed an almost extreme suspicion of the police. Petitioner's capital sentencing jury was furnished with a wealth of information concerning petitioner's background, including extensive documentation concerning petitioner's juvenile justice involvement, juvenile probation records, and psychological evaluations, as well as testimony from petitioner's family members.   Having carefully reviewed all of the records and trial testimony that was before petitioner's capital sentencing jury, there can be no reasonable disagreement with this Court's conclusion that there is no "new" mitigating evidence of substance included in the voluminous new records petitioner has furnished to this Court.   The new affidavits from petitioner's family members submitted to the state habeas court in

242

petitioner's first and second state habeas corpus proceedings
added very little new information to the testimony of
petitioner's mother, sister, and uncle given during the
punishment phase of petitioner's capital murder trial.  The
additional documents petitioner presented to the state habeas
court in his first and second state habeas corpus proceedings
also contained very little truly "new" information about
petitioner's background that was not contained in the voluminous
Texas Youth Commission file admitted into evidence at trial as
State Exhibit no. 188.  The expert opinions offered during
petitioner's first state habeas corpus proceeding by Dr Rosin,
Dr. Allen, and Dr. Ferrell were all readily subject to
impeachment based upon their unfamiliarity with the evidence
actually admitted during the punishment phase of petitioner's
capital murder trial, as well as their reliance upon petitioner's
self-serving descriptions of his capital offense rather than the
evidence regarding same admitted during petitioner's trial.  The
opinions offered by Dr. Murphey and Dr. Ferrell in the latest
batch of affidavits submitted by petitioner suffer from the same
defects as well as their inability to definitively diagnose
petitioner with Fetal Alcohol Syndrome.  Had Dr. Ferrell, Dr.
Rosin, Dr. Allen, and Dr. Murphey testified at the punishment
phase of trial in a manner consistent with the affidavits (and
testimony) they furnished the state habeas court, there is no

reasonable basis to believe the outcome of the punishment phase of petitioner's capital murder trial would have been any different. Suggestions that petitioner might suffer from Fetal Alcohol Syndrome would have opened the door to the prosecution's presentation of psychological evidence showing that persons suffering from such maladies are incapable of experiencing or displaying remorse for their criminal misconduct, incapable of learning from their mistakes, and unlikely to grow out of their tendency toward violent conduct. In sum, evidence petitioner suffers from Fetal Alcohol Syndrome would have been double-edged in nature, i.e., while potentially diminishing petitioner's moral culpability, it would most definitely have increased the likelihood of a prosecution-friendly answer to the future dangerousness special issue. Given (1) the documented, extensive, violent, nature of petitioner's criminal history, (2) the conflicting evidence showing petitioner ever expressed remorse for his murder of officer Riojas, (3) petitioner's failure to take the stand at his trial and express remorse for any of his criminal misconduct, (4) the undisputed fact petitioner was trained by members of his own family (themselves almost all convicted criminals) to commit crimes, and (5) petitioner's early onset drug abuse, sexual activity, and gang involvement, reasonable minds could not disagree with this

Court's analysis of the prejudice prong of *Strickland* with regard to petitioner's *Wiggins* claim.

There can be no disagreement among reasonable persons with this Court's conclusion that petitioner's last two ineffective assistance claims are foreclosed by state appellate or state habeas court decisions construing applicable state procedural or evidentiary rules as forbidding the very actions petitioner complains his trial counsel failed to accomplish at trial. Petitioner's trial counsel cannot be faulted for failing to do the impossible. *United States v. Cronic*, 466 U.S. at 656 n.19, 104 S.Ct. at 2045 n.19.

Petitioner's fifth through ninth claims herein are all challenges to the Texas capital sentencing scheme which have repeatedly been either (1) implicitly rejected by the Supreme Court (through repeated denials of certiorari review following denials of CoA by the Fifth Circuit), (2) expressly rejected by both the Fifth Circuit and this Court in published opinions, or (3) both.  None of these claims deserve encouragement to proceed further.  For the foregoing reasons, this Court concludes petitioner is not entitled to a Certificate of Appealability with regard to any of his claims herein. *See Blue v. Thaler*, 665 F.3d at 662-70 (rejecting a CoA for many of the same constitutional challenges petitioner presents herein to the Texas capital sentencing scheme).

Accordingly, it is hereby **ORDERED** that:

1.  All relief requested in petitioner's amended federal habeas corpus petition, filed January 26, 2012, docket entry no. 29, is **DENIED**.

2.  Petitioner is **DENIED** a Certificate of Appealability on all claims herein.

3.  Petitioner's request for an evidentiary hearing is **DENIED**.

4.  All other pending motions are **DISMISSED AS MOOT**.

5.  The Clerk shall prepare and enter a Judgment in conformity with this Memorandum Opinion and Order.

SIGNED this ___*18*___ day of December, 2012.


_____
ORLANDO L. GARCIA
United States District Judge


246